## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

| | | |
|---|---|---|
| **INDIGO AG, INC.** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **V.** | ) | **CIVIL ACTION NO._____** |
| | ) | |
| **HAWK SOLUTIONS, LLC, and** | ) | |
| **JONATHAN A. DIETRICH** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## COMPLAINT
## JURY TRIAL DEMANDED

COMES NOW, Plaintiff Indigo AG, Inc., through undersigned counsel, and files this Complaint as follows:

### PARTIES

1.      Plaintiff, Indigo AG, Inc. ("Indigo" or "Plaintiff"), is a Profit Corporation incorporated under Delaware law and authorized to do business in the State of Louisiana. Its principal corporate activities take place outside of Texas or Wyoming. *See* 28 U.S.C. § 1332(c)(1).

2.      Defendant, Hawk Solutions, LLC ("Hawk Solutions"), is a limited liability company organized under the laws of Wyoming with its principal place of business at 318 McMicken St., Rawlins, WY 82301, and which may be served with process by service upon its registered agent, Vista Management Services, Inc., 318 McMicken St. Rawlins, WY 82301. *See* 28 U.S.C. § 1332(c)(1).

3.      Defendant, Jonathan A. Dietrich ("Dietrich"), is a resident citizen of Bailey County, Texas, who may be served with process at 1909 West Avenue H, Muleshoe, TX 79347.

## JURISDICTION AND VENUE

4.      This Court has personal jurisdiction over Hawk Solutions and Dietrich (collectively, "Defendants"), each of whom has sufficient contacts in the State of Louisiana, as set forth in this Complaint.

5.      This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(a) because the amount in controversy is greater than $75,000.00, exclusive of interest and costs, and complete diversity exists between Plaintiff and Defendants.

6.      Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claims contained herein occurred within this district.

## FACTS

7.      Indigo facilitates the sale and purchase of farm crops, including corn and soybeans, by maintaining an online platform that enables potential buyers to submit "bids" directly to growers. When a potential buyer submits a bid on Indigo's online platform, growers have the option to accept the bid in whole or in part. Indigo then confirms to the buyer that a grower is willing and able to fill the bid, at which time the buyer becomes obligated by contract to purchase the crops.

8.      Dietrich, acting individually and as an agent of Hawk Solutions, contacted Indigo with interest to submit bids on the online platform as a potential buyer of corn and soybeans.

9.      Indigo sent the Defendants a Credit Application, which Dietrich completed and returned to Indigo on or about August 7, 2018. A redacted copy of the Credit Application is attached hereto as **Exhibit 1**.

10.     On September 4, 2018, while Indigo's credit review process was pending, the

Defendants executed a Marketplace Master Supply Agreement (the "Master Agreement"), a true and correct copy of which is attached hereto as **Exhibit 2**.

11.     On that same day, the Defendants submitted bids for 50,000 bushels of non-GMO corn and 40,000 bushels of non-GMO soybeans, true and correct copies of which are attached hereto as **Exhibit 3**.

12.     On September 13, 2018, the Defendants sent Indigo a purchase order amending their bid on non-GMO corn from 50,000 bushels to 100,000 bushels. A true and correct copy of the purchase order is attached hereto as **Exhibit 4**.

13.     Indigo located growers to partially fill the Defendants' bids. One such grower was Jonathan Hopkins, whose farm is located at 156 Merle Gustafson Road, Tallulah, Louisiana 71282.

14.     Indigo's review of the Defendants' credit history revealed issues that required Indigo to request further assurance from the Defendants that they would fulfill their payment obligations.

15.     Accordingly, Indigo confirmed the Defendants' purchase of the corn and soybeans and instructed the Defendants to pay for the crops in full before collecting them.

16.     Instead of making any payment and in conscious disregard of the earlier communication from Indigo, on or about September 19, 2018, the Defendants entered Jonathan Hopkins' farm and collected 3,000 bushels of non-GMO soybeans without permission. Indigo is unaware of the current location of the soybeans.

17.     When Indigo learned of the Defendants theft, Indigo sent a demand letter to the Defendants requesting payment in full, a true and correct copy of which is attached as **Exhibit 5**.

18.     Despite Indigo's demand, Defendants failed and refused to make any payment on

the outstanding balance. Consequently, and with no further contact from Defendants, Indigo was forced to resell the 100,000 bushels of corn to another buyer at a price $72,750.00 below the price agreed to by the Defendants.

19.     Indigo sent a second demand letter to the Defendants, informing them that Indigo had been forced to resell the corn, stating that Indigo was calculating the total damages incurred, and demanding payment in full. A true and correct copy of the letter is attached hereto as **Exhibit 6**.

20.     On or about October 30, 2018, Indigo received a wire transfer from Hawk Solutions in the amount of $15,000.00.

21.     Indigo sent yet a third demand letter to the Defendants, on or about November 15, 2018, acknowledging receipt of the $15,000, reaffirming the demand for payment in full, and setting forth the precise amounts the Defendants owe Indigo. A true and correct copy of the letter is attached hereto as **Exhibit 7**.

22.     The Defendants have made no further payments to Indigo and have not returned the soybeans.

## COUNT I - BREACH OF CONTRACT

23.     Indigo restates and realleges the allegations set forth in Paragraphs 1 through 22 above.

24.     Under Article 1994 of the Louisiana Civil Code, "[a]n obligor is liable for the damages caused by his failure to perform a conventional obligation. A failure to perform results from nonperformance, defective performance, or delay in performance."

25.     Article 2611 of the Louisiana Civil Code provides, in pertinent part, "[w]hen the buyer fails to perform a contract of sale of movable things, the seller, within a reasonable time

and in good faith, may resell those things that are still in his possession. In such a case the seller is entitled to recover the difference between the contract price and the resale price. The seller may recover also other damages, less the expenses saved as a result of the buyer's failure to perform."

26.     The Defendants entered into a contract, either by the Master Agreement, orally, or otherwise, to purchase 100,000 bushels of corn and 3,000 bushels of soybeans.

27.     The Defendants took possession of the soybeans without paying for them as contracted, causing Indigo damages in the amount of $25,000.00.

28.     The Defendants failed and refused to pay for the corn as contracted. Due to Defendant's failure to perform, Indigo was forced to resell the corn for $72,750.00 less than the contract price.

29.     After crediting the Defendant's partial payment of $15,000.00, the Defendants' breaches have caused Indigo damages in the amount of $82,750.00 plus pre- and post-judgment interest, consequential damages related to the resale of the corn, and fees and expenses incurred herein.

## COUNT II - DETRIMENTAL RELIANCE

30.     Indigo restates and realleges the allegations set forth in Paragraphs 1 through 29 above.

31.     Under Article 1967 of the Louisiana Civil Code, "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying."

32.     The Defendants represented to Indigo that they would purchase the corn and soybeans from Indigo at certain amounts.

33.     Indigo justifiably and reasonably relied upon those representations.

34.     But for the Defendants representations, Indigo would have contracted with another buyer to purchase the corn and soybeans.

35.     The Defendants knew or should have known that their actions would induce Indigo to rely upon the representations and promises to its detriment.

36.     The Defendants are liable to Indigo for all damages arising out of their actions as set for in this Count.

## COUNT III - NEGLIGENT MISREPRESENTATION

37.     Indigo restates and realleges the allegations set forth in Paragraphs 1 through 36 above.

38.     Defendants represented to Indigo that they would purchase the corn and soybeans from Indigo at certain amounts.

39.     Defendants knew or should have known that the representations were false.

40.     Defendants made the misrepresentations with the intent to induce Indigo to act upon them.

41.     Indigo relied upon the misrepresentations made by the Defendants by not contracting with another buyer to purchase the corn and soybeans.

42.     The Defendants are liable to Indigo for all damages arising out of their misrepresentations.

## COUNT IV - FRAUD

43.     Indigo restates and realleges the allegations set forth in Paragraphs 1 through 42 above.

44.     Under Article 1953 of the Louisiana Civil Code, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one

party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."

45.     Indigo specifically alleges in this Complaint numerous acts of fraud committed by the Defendants, which include, but are not limited to:

      a.     Making promises to pay Indigo for the corn and soybeans with the intention to cause Indigo loss and inconvenience; and

      b.     Making promises to pay Indigo for the soybeans with the intent to discover the location of the soybeans and collect the soybeans without paying Indigo.

46.     The Defendants are liable to Indigo for all damages arising out of their fraud.

47.     Indigo is also entitled attorneys' fees pursuant to Article 1958 of the Louisiana Civil Code.

## COUNT V – REVENDICTORY ACTION

48.     Indigo restates and realleges the allegations set forth in Paragraphs 1 through 47 above.

49.     Under Article 526 of the Louisiana Code: "[t]he owner of a thing is entitled to recover it from anyone who possesses or detains it without right and to obtain judgment recognizing his ownership and ordering delivery of the thing to him."

50.     Indigo had ownership rights in the 3,000 bushels of soybeans located at Jonathan Hopkins' farm.

51.     The Defendants collected the soybeans without right to do so.

52.     Indigo is entitled to return of the 3,000 bushels of soybeans.

## COUNT VI – DELICTUAL ACTION / CONVERSION

53.     Indigo restates and realleges the allegations set forth in Paragraphs 1 through 52 above.

54.     Under Article 2315 of the Louisiana Code: "every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

55.     The Defendants collected the soybeans without authorization to do so.

56.     The Defendants transported the soybeans from Jonathan Hopkins' farm without authorization and with the intent to exercise control over the soybeans.

57.     The Defendants withheld the soybeans from Indigo after Indigo demanded their return.

58.     The Defendants' actions constitute delictual acts and/or conversion of the soybeans for which Indigo is entitled to recover all resulting damages.

## COUNT VII – UNJUST ENRICHMENT

59.     Indigo restates and realleges the allegations set forth in Paragraphs 1 through 58 above.

60.     Under Article 2298 of the Louisiana Code: "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person."

61.     The Defendants collected 3,000 bushels of soybeans without paying Indigo for them.

62.     Accordingly, the Defendants have been unjustly enriched to the detriment of Indigo.

63.     The Defendants are liable to Indigo for the value of the soybeans.

## COUNT VIII – OPEN ACCOUNT

64.     Indigo restates and realleges the allegations set forth in Paragraphs 1 through 63 above.

65.     Under Article 2781 of the Louisiana Code: "[w]hen any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting

forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant."

66.     After crediting the Defendant's partial payment of $15,000.00, the Defendants' owe the principal amount of $82,750.00 plus pre- and post-judgment interest to Indigo on open account.

67.     Indigo sent demand to the Defendants, both via letter and this Complaint, as required by Article 2781 of the Louisiana Code.

68.     Indigo is entitled to payment of the principal account balance of $82,750.00 plus pre- and post-judgment interest and attorneys' fees.

WHEREFORE, PREMISES CONSIDERED, Indigo AG, Inc., demands judgment of and from the Defendants, as follows:

a.      Actual damages from Hawk Solutions, LLC and Jonathan A. Dietrich, jointly and severally, in the principal amount of $82,750.00;

b.      Consequential damages related to the resale of the corn, in an amount to be shown at the trial of this cause;

c.      Pre-judgment interest at the maximum amount allowable by law from the date due to the date of entry of the judgment;

d.      Post-judgment interest at the maximum amount allowable by law from the date of entry of the judgment until paid;

e.      All costs and attorneys fees' incurred herein; and

f.      Such other and further relief as this Court may deem just and proper.

Respectfully submitted, this 7th day of January, 2019.

INDIGO AG, INC.


*/s/ Christopher D. Meyer*
Christopher D. Meyer (LA Bar #35917)
Attorneys for Plaintiff INDIGO AG, INC.

**BURR & FORMAN LLP**
The Pinnacle Building
190 E. Capitol St., Suite M-100
Jackson, Mississippi 39201
Telephone: (601) 355-3434
Facsimile: (601) 355-5150
cmeyer@burr.com